# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### Indianapolis Division

| | |
|---|---|
| LAVONNA MARIE THOMPSON and<br>RICKY CHESLEY THOMPSON,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br>U.S. BANK, NA, as indenture Trustee for the<br>CIM TRUST 2016-1, EQUIFAX INFORMATION<br>SERVICES, LLC., TRANS UNION, LLC., and<br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>        *Defendants*. | )<br>)<br>)  Case No.     1:20-cv-1924-SEB-TAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

The Court should deny Plaintiffs' Motion for Leave to File First Amended Complaint ("Motion for Leave to Amend") because amendment would be futile.[1] Defendants, Select Portfolio Servicing, Inc. ("SPS") and U.S. Bank, NA, as indenture Trustee for the CIM Trust 2016-1 ("Trustee" and with SPS, "Defendants"), previously moved to dismiss Plaintiffs' bankruptcy claims (Count XIX), Indiana Deceptive Consumer Sales Practices Act ("DCSA") claim (Count XX), and Fair Credit Reporting Act ("FCRA") claim (Counts V and VI), which arguments Defendants incorporate here. [Dkt.36-37, 57.] Defendants' motion to dismiss is fully briefed and ripe for review. As explained in detail below, Plaintiffs' proposed

---

[1] Defendants do not object to Plaintiffs' proposal to remove (1) the factual allegations and legal claims against Equifax Information Services, LLC, Trans Union, LLC, or Experian Information Solutions, Inc.; and (2) the claims and allegations under the TCPA. All of these claims have been dismissed.

1

Amended Complaint does not cure the deficiencies explained in Defendants' motion to dismiss. These counts do not assert plausible claims. Amendment would be futile.

Defendants also moved to dismiss Plaintiffs' claims under the Truth in Lending Act ("TILA") (Count IV) and Real Estate Settlement Procedures Act ("RESPA") (Count II). Plaintiffs' proposed Amended Complaint does not amend the allegations supporting these claims, which should also be dismissed.

Consequently, the Court should deny Plaintiffs' Motion for Leave to Amend and dismiss Plaintiff's Counts II, IV, V, VI, XIX, and XX with prejudice.

## II.   ARGUMENT

### A.   A request for leave to amend should be denied if amendment would be futile.

Although leave to file an amended complaint should be "freely given," a court may deny leave for several reasons, including: "undue delay, bad faith, or dilatory motive, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). A "court may deny leave to amend [under Rule 15] if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apartments. v. U.S. Dep't Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (citation omitted). Amending a complaint "is futile 'if the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

Allowing futile amendments would only "impose upon the defendants and the courts the arduous task of responding to an obviously futile gesture" and re-briefing and re-arguing incurable pleading issues. *Crestview Vill.*, 383 F.3d at 558. (quoting *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991)). Here, granting Plaintiffs leave to amend would be futile because the proposed amendments do not state plausible claims.

## B.   Plaintiffs' proposed amendments would be futile.

### 1.   Plaintiffs' bankruptcy claims are not plausible because their loan was not discharged in their bankruptcy case.

Plaintiffs' Motion for Leave to Amend explains that the proposed Amended Complaint includes additional information allegedly supporting their request for an Order of Contempt related to SPS's alleged violation of the bankruptcy discharge injunction. [Dkt.91, p.2 (sub-point (5)); Dkt.91-2, PageID#1015-16, ¶292-98.] The prerequisite to this request is that the loan was discharged in Plaintiffs' bankruptcy case. It was not.

Bankruptcy debtors who complete their Chapter 13 plan are entitled to a discharge, with certain exceptions. 11 U.S.C. § 1328.

One such exception applies here. Any debt "provided for under Section 1322(b)(5)" is explicitly exempt from discharge. 11 U.S.C. § 1328(a)(1) (providing discharge of all debts under the Chapter 13 plan, except, among others, debts "provided for under Section 1322(b)(5)"). Section 1322(b)(5) authorizes a Chapter 13 plan to provide for, among other things, regular payments on a secured debt that has a last payment due after the final payment under the plan. 11 U.S.C. §

1322(b)(5) (stating the plan may "provide for the curing of any default within a reasonable time and maintenance of regular payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.").

There is no dispute that the loan at issue falls squarely under Section 1322(b)(5); thus, as a matter of law, it is exempt from discharge. The scheduled maturity date of the loan (i.e., the due date of the last payment) is August 2029. [Dkt.91-16, PageID#1091 (Loan Repayment and Security Agreement, p.1).] During their bankruptcy case, Plaintiffs were obligated to make their monthly payments directly to SPS. [Dkt.91-2, PageID#979, ¶36.] Plaintiffs completed their plan payments and obtained a discharge order in November 2018. [Dkt.91-2, PageID#980, ¶43.] Because the final payment is due on the loan after Plaintiffs completed their plan payments, the loan is a Section 1322(b)(5) debt. It is exempt from discharge. 11 U.S.C. § 1328(a)(1). Consequently, Plaintiffs' bankruptcy allegations do not state a plausible claim because their loan was not discharged.

To the extent Plaintiffs allege SPS was obligated to notify the bankruptcy court that they had missed payments during the plan, no law requires any such notice. *See, e.g., In re Gibson*, 582 B.R. 15, 18 (Bankr. C.D. Ill. 2018) ("No provision of the Bankruptcy Code or Rules requires a debtor to report a default on direct payments."); *see also In re Finley*, Bk. No. 12-41457, 2018 WL 4172599, at *3 (Bankr. S.D. Ill. Aug. 28, 2018) ("In any event, the Debtors remain obligated to pay the post-petition delinquency owed to their mortgage creditor."). Nor does Plaintiffs'

4

proposed Amended Complaint allege the existence of any such law.

Similarly, to the extent Plaintiffs rely on Rule 3002.1, that reliance is misplaced. That rule applies only in a bankruptcy case. Fed. R. Bankr. P. 3002.1(a) ("This rule applies in a chapter 13 case . . . ."). The Advisory Committee Notes to the rule make clear this point: "**Subdivision (a).** Subdivision (a) specifies that this rule applies **only in a chapter 13 case** to claims secured by a security interest in the debtor's principal residence." *Id.* (emphasis added); *see also* Fed. R. Bankr. P. 1001 ("The Bankruptcy Rules and Forms govern procedure in cases under Title 11 of the United States Code."); *In re Gravel*, 601 B.R. 873, 883 (Bankr. D. Vt. 2019), *motion to certify appeal granted*, No. 11-10112, 2019 WL 3783317 (Bankr. D. Vt. Aug. 12, 2019) (explaining Rule 3002.1 applies only in a bankruptcy case). Plaintiffs' attempt to enforce a Federal Rule of Bankruptcy Procedure outside of the bankruptcy court fails to state a plausible claim. Plaintiffs' motion for leave to amend their bankruptcy claim should be denied as futile and these claims should be dismissed with prejudice.

### 2. Plaintiffs' DCSA claim does not state a plausible claim.

Defendants moved to dismiss Plaintiffs' DCSA claim for four reasons: (1) the DCSA does not provide a private cause of action here because this case concerns a consumer transaction in real property; (2) Plaintiffs did not rely on any alleged deceptive act; (3) Plaintiffs did not sufficiently allege an incurable deceptive act and did not provide adequate notice of any purported uncured deceptive act; and (4) the DCSA's 2-year statute of limitations bars their claim. Plaintiffs' proposed Amended

Complaint does not cure any of these deficiencies. Their motion for leave to amend should be denied as futile and this claim should be dismissed with prejudice.

To maintain their DCSA claim, Plaintiffs must establish that they relied upon an uncured or incurable deceptive act and that they complied with the notice and time limitations imposed by the DCSA. Ind. Code §§ 24-5-0.5-4 & 5; *see also, e.g., A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*, 500 N.E.2d 1257, 1262 (Ind. Ct. App. 1986) ("Plummer") (explaining the elements of a claim under the DCSA). The notice and time limitations require, among other things, that the consumer provide explicit written notice to the supplier of the alleged uncured deceptive act and bring any action within 2 years after the occurrence of the purported deceptive act. Ind. Code § 24-5-0.5-5.

### a. The DCSA provision providing a private cause of action does not apply to consumer transactions in real property.

The DCSA provides a private right of action for consumers who relied upon an uncured or incurable deceptive act, but that subsection "does not apply to a consumer transaction in real property . . . ." Ind. Code § 24-5-0.5-4(a). Plaintiffs conceded as much. [Doc.51, p.12.]

The DCSA's definition of "consumer transaction" includes "the collection of or attempt to collect a debt by a debt collector." Ind. Code § 24-5-0.5-2(a)(1)(C). Applying this plain definition provides that a consumer transaction in real property means the collection of or attempt to collect a debt secured by real estate. Ind. Code § 24-5-0.5-2(a)(1)(C); *see also United States v. Carpenter*, 143 F.2d 47, 48 (7th Cir. 1944) (explaining courts do not ignore plain statutory terms); *Shlahtichman v. 1-*

6

*800 Contacts, Inc.*, 615 F.3d 794, 798 (7th Cir. 2010) (stating courts apply a statute's plain language as it is written).

Here, Plaintiffs' proposed Amended Complaint concedes that SPS is the servicer of their mortgage-secured loan. [Dkt.91-2, PageID#974-75, ¶1-5.] They base their DCSA claim upon alleged servicing errors and subsequent collection efforts purportedly committed by SPS. [*E.g.*, *id.*, PageID#1016-17, ¶302.] Put another way, Plaintiffs allege SPS's servicing of their real-estate-secured loan somehow constitutes a violation of the DCSA. But the DCSA explicitly excludes a private right of action for conduct related to collecting or attempting to collect a debt secured by real estate. Ind. Code § 24-5-0.5-4(a); *see also Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019) (holding the DCSA does not contemplate damages "when the alleged deception concerns real property").

### b.   Plaintiffs cannot establish reliance on any alleged deceptive act.

Alternatively, if Plaintiffs have a private right of action under the DCSA, to maintain such a claim, they must rely upon the purportedly deceptive act. Ind. Code § 24-5-0.5-4(a) (providing "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages . . . ."); *see also Rainbow Realty*, 131 N.E.3d at 178 ("A prerequisite for obtaining damages is that the claimant relied on the deception.").

Here, Plaintiffs' amended allegations, just like their original allegations, do not assert any reliance. [Dkt.91-2, PageID#1016-17, ¶300-304.] Nor could they, since they dispute that SPS properly serviced the loan. [*Id.*] That is the exact

7

opposite of reliance. *Reliance*, Black's Law Dictionary (11th ed. 2019) (defining "reliance" as "[d]ependence or trust by a person, esp. when combined with action based on that dependence or trust."). Plaintiffs' proposed amended DCSA allegations fail to state a claim because they cannot plausibly allege the statutorily required reliance. *Rainbow Realty*, 131 N.E.3d at 178.

### c. Plaintiffs did not sufficiently allege an incurable deceptive act and did not provide adequate notice of any purported uncured deceptive act.

The parties agree that, to establish liability under the DCSA, Plaintiffs must either (1) comply with strict notice requirements before bringing a claim for an "uncured" act, *Lehman v. Shroyer*, 721 N.E.2d 365, 368 (Ind. Ct. App. 1999); or (2) allege, consistent with the heightened pleading standard under Rule 9(b), that the deceptive act is incurable, *Lyons v. Leatt Corp.*, No. 4:15-CV-17-TLS, 2015 WL 7016469, at *4 (N.D. Ind. Nov. 10, 2015) ("Because an incurable deceptive act requires an intent to defraud, the Plaintiff must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"). [Doc.51, p.16-17.] An "'[i]ncurable deceptive act' means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(8). Alternatively, an uncured deceptive act requires notice from the consumer and either a lack of an offer to cure or a failure to cure after the consumer accepts the offer to cure. Ind. Code § 24-5-0.5-2(7).

Plaintiffs' proposed Amended Complaint improperly concludes that SPS's purported conduct constitutes "both uncured and incurable" deceptive acts. [Dkt.91-2, PageID#1016-17, ¶302.] But merely alleging that an incurable deceptive act

occurred is not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted). This is especially so since the heightened pleading standard under Rule 9(b) applies to alleged incurable deceptive acts, a point Plaintiffs previously acknowledged. *Lyons*, 2015 WL 7016469, at *4 ("Because an incurable deceptive act requires an intent to defraud, the Plaintiff must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"); [Doc.51, p.16-17]. To meet the standard, Plaintiff is required to state who made the misrepresentation, when, where, how, and what was said. *Lyons*, 2015 WL 7016469, at *4. They have failed to do so. Plaintiffs' proposed Amended Complaint alleges no facts supporting a scheme or artifice, or any intention by SPS to defraud or mislead them. It does not identify the *who, when, where, how, and what* standard required under Federal Rule of Civil Procedure 9(b). *Id.* Plaintiffs instead complain generally about the manner in which SPS serviced their loan, but fail to even allege that SPS intended to defraud or mislead them. [Dkt.91-2, PageID#1016-17, ¶300-304.] This does not sufficiently state a claim for an incurable deceptive act. *Lyons*, 2015 WL 7016469, at *4.

That leaves Plaintiffs with a potential claim for an uncured deceptive act. Ind. Code § 24-5-0.5-5; *McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980). To establish liability for an uncured act under the DCSA, Plaintiffs must comply with its strict notice requirements. *Lehman*, 721 N.E.2d at

368. The DCSA notice provisions are to be given a "literal application." *Id.* at 369. The written notice must "state fully the nature of the alleged deceptive act **and the actual damage suffered therefrom**." Ind. Code § 24-5-0.5-5(a) (emphasis added); *Plummer*, 500 N.E.2d at 1262.

Plaintiffs conceded that they did not satisfy the strict requirement to provide notice of the actual damages they allegedly suffered from the purported deceptive act. [Doc.51, p.18.] Their proposed Amended Complaint does not, and cannot, cure this deficiency. This concession bars their DCSA claim. Ind. Code § 24-5-0.5-5(a); *Lehman*, 721 N.E.2d at 368.

Nor have Plaintiffs asserted any allegations sufficient to satisfy the Act's notice requirement, with which the Indiana Court of Appeals has held Plaintiffs must strictly comply. *Lehman*, 721 N.E.2d at 368. In *Lehman*, the plaintiff brought a counterclaim alleging a deceptive act, but he had failed in previous communications to put the defendant on notice of the allegedly-uncured deceptive acts. *Id*. The plaintiff argued that because the defendant had failed to raise lack of notice as an affirmative defense, it was waived. The Indiana Court of Appeals disagreed, and held the responsibility of notice falls directly on the plaintiff. The court emphasized that this notice "is an essential element of plaintiff's statutory action." *Id.* at 369. The court upheld the trial court's determination that the DCSA does not apply when insufficient notice has been provided to a defendant. *Id.*; *see also Plummer*, 500 N.E.2d at 1262-64 (reversing judgment against defendant under the DCSA because plaintiff failed to provide adequate notice of the alleged deceptive

act and the actual damages purportedly stemming from it); *McCormick Piano*, 412 N.E.2d at 849 (holding plaintiffs were limited to asserting an incurable deceptive act because they failed to provide adequate notice under the DCSA).

Like the plaintiffs in *Lehman*, *Plummer*, and *McCormick Piano*, Plaintiffs here failed to put SPS on adequate notice of the allegedly uncured deceptive act(s) before filing suit. Although Plaintiffs attached to their proposed Amended Complaint a number of exhibits in which they requested information from SPS or raised general issues related to the servicing of their loan, only one of them contained any specific allegations of wrongdoing: a vague statement that SPS did not credit Plaintiffs' April 2014 payment.[2] *Plummer*, 500 N.E.2d at 1262; *see also* Ind. Code § 24-5-0.5-3 (listing examples of deceptive acts); [Dkt.91-15, 91-17, 91-18, 91-20, & 91-22]. Plaintiffs have not alleged facts to support the essential notice element of their claim. *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 911 (7th Cir. 1999) (holding a "complaint must allege facts bearing on all material elements necessary to sustain a recovery under some viable legal theory.") (internal quotation omitted).

### d. The DCSA's statute of limitations bars Plaintiffs' claim.

The DCSA requires that any action brought under it must be filed within 2 years of the alleged deceptive act. Ind. Code § 24-5-0.5-5(b).

Plaintiffs' amendments do not save this claim from the 2-year statute of limitations. Although they did not allege it constitutes a deceptive act, Plaintiffs'

---

[2] As explained in the following section, the DCSA's 2-year statute of limitations bars any claim based upon this allegation.

counsel hinted at a single specific alleged servicing error in his July 17, 2020 letter to SPS. [Dkt.91-22.] There, Plaintiffs' counsel asserted that Plaintiffs did not miss a payment in April 2014. [*Id.*, p.3.] This is the only specific error Plaintiffs ever identified regarding the servicing of their loan. [Dkt.91-15, 91-17, 91-18, 91-20, & 91-22.] But assuming that it constituted a deceptive act under the DCSA—a point Defendants dispute—this error allegedly occurred in April 2014, over 6 years before Plaintiffs brought this lawsuit. [Dkt.91-22, p.3, PageID#1189.] The two-year statute of limitations under the DCSA bars Plaintiffs' claim. Ind. Code § 24-5-0.5-5(b). The Court should deny Plaintiffs' motion for leave to amend and dismiss this claim with prejudice.

### 3.   Plaintiffs' amended FCRA claim does not state a plausible claim.

Plaintiffs' amended FCRA claim contains additional factual allegations not included in their initial Complaint. Plaintiffs obtained through discovery the documents that support these additional factual allegations. It appears that Plaintiffs asserted this claim in hopes that discovery would uncover factual support for it. But that is improper. *See, e.g., Agristor Leasing v. McIntyre*, 150 F.R.D. 150, 152 (S.D. Ind. 1993) ("It is insufficient . . . to stake out a position and rely on the results of a post-filing discovery as a form of fishing expedition."); *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988) (recognizing attorneys' obligation to conduct a reasonable inquiry into the facts before filing a claim). Plaintiffs' Motion for Leave to Amend the FCRA claim should be denied on this basis alone.

Moreover, Plaintiffs' amended FCRA allegations are insufficient to save this claim from dismissal because they do not contain sufficient factual allegations to establish that SPS's investigation was unreasonable or that Plaintiffs suffered concrete damages. Their Motion for Leave to Amend should be denied as futile.

> **a.   Plaintiffs have not asserted any factual allegations that, if taken as true, establish SPS's investigation was unreasonable.**

Under FCRA, when a furnisher of credit information, like SPS, receives a dispute form (commonly called an ACDV) from a credit reporting agency (CRA), that furnisher must conduct a reasonable investigation in response to the dispute. 15 U.S.C. § 1681s-2(b). Courts across the country have repeatedly held that when a consumer brings a claim under FCRA alleging that the furnisher conducted an unreasonable investigation, the consumer bears the burden of proof as to reasonableness. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) ("The burden of showing the investigation was unreasonable is on the plaintiff."); *see also Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1157 (9th Cir. 2009) (same); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (same); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429-31 (4th Cir. 2004) (same); *Maiteki v. Marten Transp. Ltd*, No. 12-cv-2021-WJM-CBS, 2015 WL 5996760, at *9 (D. Colo. Oct. 15, 2015), *aff'd* 828 F.3d 1272 (10th Cir. 2016) (same); *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1326–27 (M.D. Fla. 2015) (same); *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1313-14 (S.D. Fla. 2012) (same); *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1011 (D. Colo. 2012) (same); *Anastasion v. Credit Serv. of Logan, Inc.*, No. 2:09–CV–81 TS,

2010 WL 4782984, at *6 (D. Utah Nov. 16, 2010) (same); *In re Gill*, No. 09–15976–JNF, 2013 WL 3379542, at *4 (Bankr. D. Mass. July 8, 2013) (same); *Fregoso v. Wells Fargo Dealer Servs., Inc.*, No. CV 11–10089 SJO (AGRx), 2012 WL 4903291, at *7 (C.D. Cal. Oct. 16, 2012) (same); *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1205-06 (D. Kan. 2018) (same).

The reasonableness of SPS's investigation—i.e., what steps it did and did not take in response to the ACDV—is the issue. The results reached at the end of the investigation, even if inaccurate or unfavorable to the consumer, are not relevant under FCRA claims. *See, e.g., Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012) (explaining "the furnisher's inaccurate reporting after an investigation was not dispositive proof that its investigation was unreasonable, as despite reasonable efforts, it may not have been given sufficient information to reach the correct conclusion despite reasonable efforts.").

Here, Plaintiffs have not asserted any factual allegations to support their bare conclusion that SPS's investigation was unreasonable. [Dkt.91-2, PageID#995-1014, ¶¶132-33, 139, 149-50, 156, 166, 202, 211, 217, 240, 288.] This is insufficient to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (explaining legal conclusions and conclusory factual allegations that merely recite the elements of the claim are not presumptively true). Instead, this statement merely, but improperly, parrots FCRA's language. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Their failure to assert any factual allegations regarding the reasonableness of the investigation is fatal to their FCRA claim.

> **b. Plaintiffs have not asserted any factual allegations to establish a concrete injury.**

A complaint must clearly allege facts demonstrating the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (dismissing complaint because it did not "clearly allege facts" demonstrating that plaintiff suffered an injury in fact); *Crabtree v. Experian Info. Sols.*, 948 F.3d 872, 879 (7th Cir. 2020) (holding plaintiff lacked standing because he failed to assert a concrete injury). A complaint does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. To the contrary, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

In *Spokeo*, the Supreme Court ruled that allegations of "a bare procedural violation [of a federal statute], divorced from any concrete harm," do not "satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Lujan*, 504 U.S. at 559-60). "To establish injury in fact, a plaintiff must show that he or she suffered 'an

invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (citations omitted). A concrete injury must be real and not abstract. *Id*. Absent a concrete harm, a plaintiff has no Article III standing. *Id*. at 1549.

The Seventh Circuit requires a plaintiff to plead facts *showing* that he sustained a concrete, particularized injury that is actual and imminent. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("We join many of our sister circuits and hold that when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly—Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6).") (citations omitted). Plaintiffs' proposed Amended Complaint fails to satisfy this standard.

Plaintiffs assert their damages in only conclusory terms. Although they claim they suffered harm to their credit, [Dkt.91-2, PageID#1008, ¶252], which allegedly caused them unlawful suppression of their credit rating as well as denial and diminishment of their credit, [*Id*., PageID#1009, ¶255], they do not assert any facts supporting these bare conclusions. Similarly, Plaintiffs merely conclude that they suffered emotional distress. [*Id*., PageID#1008, ¶249.] But, because emotional distress damages are "so easy to manufacture," this, too, is insufficient. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)); *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir. 2005). Plaintiffs' proposed Amended

16

Complaint fails to sufficiently allege any concrete damages. Their Motion for Leave to Amend should be denied and their FCRA claim should be dismissed.

## C. Plaintiffs' proposed Amended Complaint does not cure the deficiencies in their TILA and RESPA claims.

Defendants previously moved to dismiss Plaintiffs' TILA and RESPA claims. [Dkt.36-37.] Plaintiffs' proposed Amended Complaint does not contain any amended allegations regarding these claims. [Dkt.91-2, ¶¶13-21, 87-123, 264-71, 280-86.] Defendants incorporate by reference their prior arguments explaining why these two claims should be dismissed. [Dkt.36-37, 57.] For the Court's convenience, Defendants summarize those arguments here.

### 1. The applicable statute of limitations bars Plaintiffs' TILA claim.

TILA imposes a one-year statute of limitations, which statute begins to run from the date of the occurrence of the alleged violation. 15 U.S.C. § 1640(e) ("Except as provided in the subsequent sentence, any action under this section may be brought . . . within one year from the date of the occurrence of the violation . . . ."); *Fendon v. Bank of Am., N.A.*, 877 F.3d 714, 716 (7th Cir. 2017) ("Section 1640(a)(1) authorizes awards of damages for violations of" TILA, and "[t]he first sentence of § 1640(e) then sets a one-year period of limitations for any claim under § 1640 as a whole."). Section 1640(e) contains three exceptions that do not apply here.

Plaintiffs' TILA allegations in their proposed Amended Complaint are substantively identical to the TILA allegations in their original Complaint. These allegations attempt to assert two separate violations: (1) an alleged failure to promptly credit payments; and (2) a purported failure to promptly provide a payoff

statement. [Dkt.91-2, PageID#1012-1013, ¶281.] Plaintiffs failed to assert any allegations in support of the latter claim. It should be dismissed. *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).

With the exception of one exhibit, Plaintiffs likewise failed to provide any factual allegations supporting their bare conclusion that SPS did not promptly credit payments. In one exhibit, however, Plaintiffs' counsel alleged that SPS did not credit Plaintiffs' April 2014 payment. [Dkt.91-22, p.3, PageID#1189.] But any claim for an alleged failure to credit a payment in April 2014 must be brought by April 2015, over five years before Plaintiffs filed this action. 15 U.S.C. § 1640(e); *Fendon*, 877 F.3d at 716. The applicable statute of limitations bars this claim. 15 U.S.C. § 1640(e); *Fendon*, 877 F.3d at 716. The Court should deny Plaintiffs' motion for leave to amend and dismiss Plaintiffs' TILA claim with prejudice.

### 2. Plaintiffs' RESPA claim should be dismissed because 12 C.F.R. § 1024.35 does not provide a private right of action.

Since the pleadings closed on Defendants' motion to dismiss, this Court held that there is no private cause of action for Plaintiffs' allegations under 12 C.F.R. § 1024.35. *Freeman v. Ocwen Loan Servicing, LLC*, No. 1:18-CV-03844-TWP-DLP, 2020 WL 7489033, at *14 (S.D. Ind. Dec. 21, 2020) (quoting *Wells Fargo Bank, N.A. v. Jones*, No. 1:15-cv-00015-PPS, 2015 WL 2345602, at *4 n.2 (N.D. Ind. May 15, 2015)).

This ruling should not be disturbed here. A private right of action does not exist to enforce a regulation that creates obligations not imposed by the controlling statute. *See*, *e.g.*, *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 906 (6th Cir. 2004) ("[A] private plaintiff cannot enforce a regulation through a private cause of action generally available under the controlling statute if the regulation imposes an obligation or prohibition that is not imposed generally by the controlling statute.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 284-85 (2001)). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander*, 532 U.S. at 291.

Plaintiffs correctly conceded that the regulation, 12 C.F.R. § 1024.35, "expands on servicers' obligations" under the statute, 12 U.S.C. § 2605. [Doc.51, p.5.] Section 1024.35 creates new requirements for a servicer who receives a "notice of error," a term not found in the statute. 12 C.F.R. § 1024.35. Plaintiffs' concession is fatal to this claim. No private right of action exists for a violation of 12 C.F.R. § 1024.35 because it imposes obligations in addition to those found in the statute. *Freeman*, 2020 WL 7489033, at *14; *Sandoval*, 532 U.S. at 284-85; *Ability Ctr.*, 385 F.3d at 906. The Court should deny Plaintiffs' Motion for Leave to Amend and dismiss this claim with prejudice.

## III.   CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Leave to Amend should be denied and their bankruptcy, DCSA, FCRA, TILA, and RESPA claims

should be dismissed with prejudice.

Respectfully submitted,

*/s/ Jacob V. Bradley*
Jacob V. Bradley, #27750-49
Michael R. Couch, #35683-49
135 N. Pennsylvania Street
Suite 2400
Indianapolis, IN 46204
Jacob.Bradley@quarles.com
Michael.Couch@quarles.com
(317) 957-5000 - Phone
(317) 957-5010 - Fax

*Attorneys for Defendants Select Portfolio*
*Servicing, Inc. and U.S. Bank, N.A., as*
*indenture Trustee for the CIM Trust 2016-1*

20

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2021, a copy of the foregoing was served electronically upon the following:

Travis W. Cohron
Clark Quinn Moses Scott & Grahn, LLP
tcohron@clarkquinnlaw.com

Sandra Davis Jansen
Kevin T. Bennett
Schuckit & Associates, P.C.
sjansen@schuckitlaw.com
kbennett@schuckitlaw.com

Leah L. Seigel
Taylor L. Hunter
Barnes & Thornburg, LLP
Leah.seigel@btlaw.com
Taylor.hunter@btlaw.com

N. Charles Campbell
Equifax Legal Department
Charles.campbell@equifax.com

Allison L. McQueen
Jones Day
amcqueen@jonesday.com

/s/ Jacob V. Bradley
Jacob V. Bradley

QUARLES & BRADY LLP
135 N. Pennsylvania Street
Suite 2400
Indianapolis, IN 46204
Tel: 317-957-5000
Fax: 317-957-5010
Jacob.Bradley@quarles.com
Michael.Couch@quarles.com

QB\67800535.1

21